### JENNINGS v. HINTON.

(Filed May 7, 1901.)

1. PLEDGES—*Fiduciary Relations — Contracts — Sale — Burden of Proof—Collateral Security.*

   Where a married woman assigns to the mortgagee of her husband an insurance policy upon the life of her husband as collateral security for the mortgage debt, the law presumes fraud in a subsequent absolute sale of the policy to the mortgagee, and the burden is upon him to show that the purchase was *bona fide* and for a fair consideration.

2. AGENCY—*Declarations.*

   Evidence of declarations of agent to prove agency is incompetent.

3. HARMLESS ERROR—*Error—Evidence.*

   Where evidence erroneously admitted could not have damaged a party, its admission was harmless error.

ACTION by Sarah E. Jennings against John L. Hinton, heard by Judge *T. A. McNeill* and a jury, at July Term, 1900, of PASQUOTANK County Superior Court. From a judgment for the plaintiff, the defendant appealed.

*E. F. Aydlett,* for the plaintiff.
*Shepherd & Shepherd,* and *Pruden & Pruden,* for the defendant.

FURCHES, C. J. This case was here at February Term, 1900 (126 N. C., 48), but the only question then passed upon was as to whether the husband had given his written assent to the assignment of the wife; while this appeal presents a question of fiduciary relations, presumptive fraud, and equitable relief.

The facts may be had by reference to the case as reported, when here before, as to plaintiff's execution of the assignment to the defendant.

But this appeal develops the fact that B. F. Jennings, husband of plaintiff, owed defendant $1,500, secured by mortgage on real estate; and that on the 19th of August, 1892, the policy of insurance for $5,000, payable to the plaintiff, was put into the hands of the defendant, as collateral security, in addition to the mortgage. To show this, the plaintiff put in evidence the following paper writing:

"August 19, 1892. Mrs. S. E. Jennings:—Your husband has given me the policy you assigned to secure yours and his note given to me for $1,500. I have handed to him the $1,500 in currency, and when said note is paid you shall have the policy. Respectfully, John L. Hinton."

The defendant kept the policy under this agreement, until 1897, and on the 22d of April, 1897, the defendant got from the plaintiff the following instrument of writing:

"For value received I hereby assign and set over to John L. "Hinton all my right and interest in Benefit Certificate No. "73836, in The American Legion of Honor Insurance Com- "pany, the same being insurance on the life of my husband, "Benjamin F. Jennings, dated 23d June, 1884, the said cer- "tificate or policy being in the sum of $5,000, being for my "benefit. The said Hinton to have the said $5,000 in the "policy absolutely with power, at the death of said Benja- "min F. Jennings, to collect the same and apply to his own "use.                                    SARAH E. JENNINGS.   (Seal.)
"Witness:   B. F. Jennings."

The last instrument was signed at the house of the plaintiff, and plaintiff and her two daughters and a son testified that the defendant came to their house about one o'clock in the afternoon, stood at the gate, which is about fifteen yards from

the house, until the paper was signed late in the evening; that B. F. Jennings, husband of plaintiff, stood at the gate with defendant the greater part of his time; that they could hear defendant and the said B. F. Jennings talking at the gate, but could not understand what they said; that occasionally the said B. F.· Jennings would come in the house and talk to plaintiff; she did not know what they were talking·about at the gate, except what her husband told her.

She was then asked whose agent the said B. F. Jennings was on that occassion, and she answered that he was the defendant's agent. She was also asked what he told her. These questions and answers were objected to, but allowed and defendant excepted.

If the first question and answer, that "B. F. Jennings was the agent of defendant," were competent, the second question and answer were competent; but if the first question and answer were not competent, then what B. F. Jennings told the plaintiff was not competent."

The plaintiff says she had no talk with the defendant, and it would seem that any information the plaintiff had, as to B. F. Jennings being the agent of the defendant, must have been received from B. F. Jennings, the alleged agent. This was not competent to prove the agency, as we have decided at this term in *Summerrow v. Baruch.* It thus seems that this first question and answer being improperly allowed, the declarations of B. F. Jennings were incompetent. And if they are material, or, in other words, unless they are harmless, the defendant is entitled to a new trial.

But it is shown that the defendant received this policy in 1892 as collateral security for a $1,500 debt, the plaintiff's husband owed him. At the time he received this policy in 1892, it was expressly stipulated that he received it as collateral security, and that when the $1,500 debt was paid, he would return it to the plaintiff. The defendant admits that

he continued to hold it under this agreement until April, 1897 (what time in April he does not state), when he returned it to the husband, and afterwards took the absolute assignment, dated 22d April, 1897, for which he paid $25; while the plaintiff testifies that it was never returned, and was never in the possession of herself or husband after it was delivered to the defendant in 1892, and that the defendant paid nothing for the assignment of 1897. These questions were submitted to the jury, and they found that said policy was assigned to the defendant as collateral security. The defendant objected to this issue and all evidence introduced to sustain it, contending that it was to contradict the written contract of the 22d of April, 1897. He also says that said contract is under seal and needs no consideration to support it.

In a court of law, under the old practice, this would have been so, and it is so now under our present practice, where the action is purely legal; but where it is equitable in its nature and a question of fraud is involved, it is not so. Fraud vitiates all contracts, whether under seal or not.

When the defendant took his policy in August, 1892, as a collateral security for his debt of $1,500, with the agreement to return the same to the plaintiff when that debt was satisfied, it established a fiduciary relation between the plaintiff and the defendant—the same as that of trustee and *cestui que trust,* or mortgager and mortgagee. This being so, the law not only looks upon any purchase of the absolute title, or reversion in the *res,* with suspicion, but *presumes fraud.* And the burden is cast upon such purchaser (the defendant in this case) to show that such purchase was fair, open and *bona fide,* and for a fair consideration. *Hall v. Lewis,* 118 N. C., 509; *McLeod v. Bullard,* 84 N. C., 515. And the defendant failing to allege and *show* that this transaction of the 22d of April, 1897, was *fair, open, bona fide, and for a fair consideration,* it is void. Indeed the jury finding there was no

consideration, it falls to the ground, and, the parties stand upon the original contract, and the fiduciary relations between them still exist.

It therefore appears to us that the evidence erroneously admitted could not have damaged the defendant and its admission harmless error.

Affirmed.